FILED

14 AUG 11 PM 4:17

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MARINO, an individual; and MICHAEL HENTON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NERY's USA, INC., a Nevada corporation registered to do business in California; JOHN E. CATHCART, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | CASE NO. 14-CV-497-BEN (JMA)<br><br>**ORDER VACATING ORDER TO SHOW CAUSE** |

On June 6, 2014, this Court issued an Order to Show Cause why this case should not be dismissed for lack of subject matter jurisdiction. (Docket No. 13). Defendants Nery's USA, Inc. (Nery's) and John E. Cathcart (Cathcart) filed a timely brief on June 23, 2014. (Docket No. 14). Plaintiffs Frank Marino and Michael Henton responded on July 7, 2014 (Docket No. 15), and Defendants replied on July 14, 2014. (Docket No. 16). Plaintiffs filed a sur-reply on July 18, 2014. (Docket No. 19). Defendants filed an additional brief on July 28, 2014 (Docket No. 21), and Plaintiffs responded (Docket No. 22).

For the reasons stated below, this Court concludes that the evidence before it establishes that this Court has subject matter jurisdiction over this matter. The Order to Show Cause is therefore **VACATED**.

## BACKGROUND

On March 5, 2014, Defendants Cathcart and Nery's filed a Notice of Removal in this Court. (Docket No. 1). The Notice of Removal asserts that this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of California and Defendants are residents of Nevada. (Notice at ¶¶ 2-4, 7). Plaintiffs allege in the Second Amended Complaint (SAC) that Defendant Cathcart is a resident of California. (SAC ¶ 6). They further allege that Nery's is a Nevada corporation which is registered to do business in, and is doing business in, San Diego County, California, and whose California headquarters are in San Diego. (*Id.* ¶ 5).

Cathcart filed a Motion to Dismiss based on lack of personal jurisdiction on April 18, 2014. (Docket No. 4). Upon review of the briefing and the complete record in this case, it was apparent that there was a controversy regarding whether Cathcart was a citizen of California or Nevada. If either defendant is a citizen of California, removal would be improper because 1) complete diversity would not exist, and 2) a California defendant cannot remove a case to federal court on diversity grounds. *See* 28 U.S.C. §§ 1332(a), 1441(b)(2). In their briefing regarding the Order to Show Cause, Plaintiffs argue that both Cathcart and Nery's are citizens of California. (Docket No. 15). Defendants argue that they are not California citizens.

## LEGAL STANDARD

Federal courts have original jurisdiction based on diversity of citizenship where the amount in controversy exceeds $75,000 and the matter is between:

>  (1) citizens of different States;
>  (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
>  (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>  (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

When a plaintiff files in state court a civil action over which the federal district

- 2 -

14cv497

courts would have original jurisdiction based on diversity of citizenship, the defendant may remove the action to federal court as long as no defendant is a citizen of the State in which such action is brought. 28 U.S.C. §§ 1441(a), (b).

The party asserting diversity jurisdiction bears the burden of proof. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001) (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)). For purposes of diversity, citizenship is determined as of the time the lawsuit was filed. *Lew*, 797 F.2d at 750 (citation omitted).

The citizenship of a natural person is determined by his or her "state of domicile, not her state of residence." *Kanter*, 265 F.3d at 857. The state of domicile is the person's "permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citation omitted). A change in domicile requires both physical presence at the new location and an intention to remain there indefinitely. *Lew*, 797 F.2d at 750 (citation omitted).

The Ninth Circuit has noted that other courts have held that determination of domicile "involves a number of factors (no single factor controlling)," including: (1) current residence, (2) voting registration and practice, (3) driver's license and automobile registration, (4) location of personal and real property, (5) location of brokerage and bank accounts, (6) location of spouse and family, (7) place of employment and business, (8) payment of taxes, and (9) membership in unions and other organizations. *Id.* (citations omitted). "The courts have also stated that domicile is evaluated in terms of objective facts, and that statements of intent are entitled to little weight when in conflict with facts." *Id.* (citations and internal quotation marks omitted).

For diversity purposes, a corporation is a citizen of every state and foreign state by which it is incorporated, and of the state and foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The principal place of business is located in the "nerve center" of the corporation, where the corporation's high level officers direct, control, and coordinate its activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81

(2010).

If at any time before final judgment it appears that a district court lacks subject matter jurisdiction "the case shall be remanded." 28 U.S.C. § 1447(c); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## DISCUSSION

The parties do not dispute that the amount in controversy exceeds $75,000. However, the parties dispute whether Defendants Cathcart and Nery's were citizens of California or Nevada when the Complaint was filed on October 18, 2013. As the party asserting diversity jurisdiction, Defendants bear the burden of proof.

### A. Cathcart

#### *i. Cathcart's Residence and Personal Connections to Nevada*

Cathcart has submitted declarations regarding his domicile. (Cathcart Decl.; Supplemental Cathcart Decl.) He states that in 1990, he switched his domicile from California to Arizona. (Cathcart Decl. ¶ 3). He then states that in 1997, he and his wife began to spend time in Incline Village, Nevada, and that they decided to permanently move from Arizona to Nevada in the "2007-2008 timeframe." (*Id.*) Cathcart declares that he and his wife consider Incline Village, Nevada to be their permanent home, have no plans to move, and plan to return indefinitely. (*Id.* ¶ 4). He states that he has lived in different rental properties in Nevada, but that he moved to his current residence at 830 Oriole Way, Unit 23 in Incline Village in the spring of 2013. (*Id.* ¶ 5). He states that he currently lives there with his wife. (*Id.*) He states that he rents the property in his own name, and that he maintains all personal and family heirlooms, artwork, and valued possessions at that residence. (*Id.* ¶ 6).

Cathcart states that he has held a Nevada or Arizona driver's license for "many years," depending on where he was spending most of his time when a license expired. (*Id.* ¶ 7). He states that he changed to a Nevada driver's license in 2012, and has no intention of seeking an Arizona driver's license in the future. (*Id.*) He submitted a

redacted copy of a driver's license issued on February 15, 2012, which lists an Incline Village address. (*Id.* ¶ 7, Ex. A). He states that he has been a registered Nevada voter for "several years," and submits a copy of a Nevada voter registration card dated February 14, 2012. (*Id.* ¶ 8, Ex. B). He declares that the Social Security Administration considers him a Nevada resident and sends correspondence to him in Nevada. (*Id.* ¶ 8). Cathcart asserts that his bank accounts have been located in Nevada for many years, and he has no bank accounts in California. (*Id.* ¶ 11). He states that he does not pay income tax in Nevada because the state does not have an income tax, but that he does not pay property or income tax in California. (*Id.* ¶ 12).

Cathcart also proffers other evidence of his connection to Nevada. He states that he has been a member of the Incline Village Recreation Center for several years. (*Id.* ¶ 10). His personal mail and the bills for the Oriole Way residence are delivered to 774 Mays Boulevard #10450, Incline Village, Nevada. (*Id.* ¶ 9). He states that there is no postal service delivery to his home in Oriole Way, or any other home he has occupied in Incline Village. (*Id.*) He has submitted redacted copies of utility bills for his home in Nevada. (*Id.*, Ex. C). He also states that his personal accountant and corporate attorney are located in Nevada. (*Id.* ¶ 12).

The foregoing factors weigh heavily in favor of finding that Cathcart is a citizen of Nevada. The Court notes that Plaintiffs do not present any evidence to undermine Cathcart's specific assertions regarding his Nevada connections. Plaintiffs suggest that Cathcart actually resides in California, but these contentions will be addressed below.

*ii. Cathcart's Time in California*

The parties vigorously dispute the significance of the time Cathcart has spent in California. Cathcart asserts that his business interests require him to travel throughout the United States and Mexico. (*Id.* ¶ 13). He states that he travels to Mexico so frequently that he is required to obtain a Temporary Resident Card. (*Id.* ¶ 17). Cathcart states that because he frequently travels to Tijuana, Mexico on behalf of Mercator Capital, Mercator Capital pays the rent on an apartment in San Diego so that

1  he has a safe place to stay when he is in Tijuana on business. (*Id.* ¶¶ 13, 14). He
2  asserts that he stays in the San Diego apartment, then drives over the border to conduct
3  business in Tijuana. (*Id.* ¶ 14). He states that when he is not traveling for business, he
4  returns to the Oriole Way residence, and that he considers this residence his home for
5  the indefinite future. (*Id.* ¶ 15). Cathcart further asserts that he does not own real
6  property in California. (*Id.* ¶ 16). He argues that there is no evidence that he intends
7  to remain in California, or to return to California, but for his business interests in
8  Mexico. (Docket No.14 at 7).

9        In support of his contention that his business travel to California does not make
10 him a domiciliary of California, Cathcart points to cases from this Circuit which
11 indicate that travel for business purposes does not make him a citizen of California.
12 (Docket No. 14 at 4-5); *Lew*, 797 F.2d at 752 (defendant failed to meet burden of
13 production to show domicile changed from California to Hong Kong where, inter alia,
14 the defendant lived in a Hong Kong hotel and returned there when not traveling, but
15 his wife remained in California, he returned to California for holidays, and he
16 maintained a California driver's license); *Williams v. Sugar Hill Music Publ'g, Ltd.*,
17 No. C 05-3155, 2006 WL 1883350, at *8 (N.D. Cal. July 7, 2006) (denying motion to
18 dismiss for lack of subject matter jurisdiction where defendants claimed a plaintiff was
19 a citizen of New Jersey where, inter alia, the plaintiff leased a New Jersey apartment
20 for use when performing in New York, but maintained a residence and driver's license
21 in California); *Barrett v. Covert*, 354 F. Supp. 446, 447-50 (E.D. Pa. 1973) (granting
22 motion to dismiss based on lack of subject matter jurisdiction where defendant was
23 domiciled in Pennsylvania, despite the fact that defendant had a vehicle registration
24 and one of two driver's licenses in New Jersey, and resided in New Jersey during the
25 summer to manage two rooming houses); *Corns v. Inter-Am. Univ. of Puerto Rico*, 217
26 F. Supp. 755, 756 (D.P.R. 1963) (denying motion to dismiss for lack of subject matter
27 jurisdiction on basis that plaintiff was not a citizen of Puerto Rico because he did not
28 give up Illinois domicile when he rented a house in Puerto Rico to live with his family

while working for the defendant). Plaintiffs seek to distinguish these cases by contending, inter alia, that Cathcart rents a California apartment from which he owns and operates Nery's, and that he has admitted to living in California. (Docket No. 15 at 5-6). Each determination of domicile necessarily turns on the particular facts of the case. However, review of the cases cited and the arguments of the parties indicates that they generally support the proposition that merely renting a California property for business purposes would not make Cathcart a citizen of California.

Plaintiffs assert that Cathcart is the president of Nery's, a corporation registered to do business in California with its California headquarters in San Diego County. (Docket No. 15 at 2). They assert that this location has an office and a warehouse with employees and operations. (*Id.*) They contend that the only other "office" for Nery's is a post office box in Incline Village, Nevada. (*Id.*) The Court notes that the Nevada office address listed for Nery's is the same address where Cathcart asserts that he receives personal mail, and that Cathcart has declared that the postal service does not deliver to his residence. (*See* Harshaw Decl., Exs. 1,2; Cathcart Decl. ¶ 9)).

Plaintiffs dispute Cathcart's account of his time in California. Plaintiffs claim that Cathcart is the sole member of Mercator Capital, which holds the title to Cathcart's condo in San Diego County. (Docket No. 15 at 2; Harshaw Decl. ¶ 5). In support of this, they submit a copy of the Nevada Secretary of State Entity Details form for Mercator Capital Advisors, Inc., which indicates that Cathcart holds all the listed officer positions. (Harshaw Decl. ¶ 5, Ex. 4).[1] Plaintiffs further point out that Cathcart does not claim to own property in Nevada. (Docket No. 15 at 2).

---

[1] In support of its filing, Plaintiffs include two documents filed with the California Secretary of State and two documents filed with the Nevada Secretary of State. (Harshaw Decl., Exs. 1-4). Plaintiffs requested judicial notice pursuant to Federal Rule 201 for the records of the California Secretary of State. (Docket No. 15-2). As the existence of these filings can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, the Court **GRANTS** the request for judicial notice. As no party disputes the accuracy of Exhibits 3 and 4 to the Harshaw Declaration, and no party objects to the propriety of this Court considering them, the Court further takes judicial notice of the filings with the Nevada Secretary of State. The Court takes judicial notice of the fact that documents with these contents were filed, and does not find that the facts represented in the documents are accurate.

In response, Cathcart declares that neither he nor Mercator own the title to a condo in San Diego County. (Supplemental Cathcart Decl. ¶ 5). Cathcart states that Mercator Capital merely pays rent on an apartment. (*Id.*) The Court notes that Plaintiffs did not cite to any documentation indicating that Cathcart, Mercator Capital, or Nery's actually held title to residential property in California in October 2013. Further, Cathcart states that he does not run Nery's from California. (Docket No. 16 at 5; Supplemental Cathcart Decl. ¶¶ 3, 7, 9). Cathcart claims that Nery's and its wholly-owned Mexican subsidiary are run primarily out of Tijuana, Mexico and Incline Village, Nevada. (Docket No. 16 at 5; Supplemental Cathcart Decl. ¶¶ 7, 11; Second Supplemental Cathcart Decl. ¶¶ 3-6). Plaintiffs do not present any direct evidence that Cathcart makes the high-level decisions for Nery's in California or actually operates Nery's from an address in California. There is also no evidence to rebut Cathcart's assertion that his wife and personal possessions are not in California.

### *iii. Cathcart's Status as Agent for Service of Process*

Plaintiffs vigorously contend that Cathcart should be considered a domiciliary of California because he is the registered agent for service of process in California. Plaintiffs have submitted two documents which Nery's has filed with the California Secretary of State which designate Cathcart as its agent for service of process, and list an address at 1872 Nirvana Ave., Chula Vista, CA 91911. (Harshaw Decl., Exs. 1, 2). A filing from July 14, 2011 states that the agent is a "natural person residing in the State of California." (*Id.*, Ex. 1). The second filing, dated May 2, 2012, specifically states that: "If the agent is an individual, the agent must reside in California, and item 10 must be completed with a California street address (a P.O. Box is not acceptable)." (*Id.*, Ex. 2). Plaintiffs therefore assert that Cathcart has declared and declares that he is a resident of California in order to remain the agent for service of process. (Docket No. 15 at 2). They allege that he has been a resident of California since at least 2011, the date of the first filing. (*Id.*) They argue, without citing authority, that Cathcart should be estopped from claiming his residency is other than where he told the

California Secretary of State. (*Id.* at 4).

Cathcart asserts that the Chula Vista address is the address of a commercial warehouse leased by a third party. (Cathcart Decl. ¶ 18). He asserts that he is not a party to any lease related to the property, that it is not a residence, and he does not live there. (*Id.*) He states that: "I am the only officer of Nery's USA and thus serve as its agent for service of process in all jurisdictions outside of Nevada where the company conducts business." (*Id.*) He contends that acting as an agent for service of process did not mean that he intended to change his state of citizenship and residence. (*Id.*) Cathcart also asserts that the evidence offered by Plaintiffs is from July 2011 and May 2012, and does not relate to the relevant time in October 2013. (Docket No. 16 at 4).

If Cathcart was a California *resident* for purposes of service of process, this would not necessarily mean that he is domiciled in the state of California. *See Kanter*, 265 F.3d at 857. However, courts have considered whether a party has represented themselves to be a resident of a state for purposes of serving as a registered agent. *See Vesci v. Pac. W. Site Servs., Inc.*, No. 2:14-cv-49, 2014 WL 2918860, at *4 (E.D. Cal. June 24, 2014) (finding plaintiff was not domiciled in North Dakota, despite being registered agent there); *Name Intelligence, Inc. v. McKinnon*, No. 10-cv-1202, 2011 WL 468452, at *3-4 (D. Nev. Feb. 4, 2011) (considering argument that defendant was a registered agent in Nevada in determining that defendant was domiciled in Nevada, but permitting jurisdictional discovery). This Court therefore takes the representations to the California Secretary of State under consideration, but does not consider them to be dispositive. Even if Cathcart were claiming to be a domiciliary of California, rather than a resident, this Court would nonetheless be obligated to look beyond Cathcart's assertions to determine whether it is proper for this Court to exercise jurisdiction.

Plaintiffs dismiss Cathcart's contention that he is the registered agent for service of process for all Nery's offices outside of Nevada, claiming that the only known offices are in California and Nevada. (Docket No. 15 at 3). They also emphasize that he is not the registered agent for Nery's or Mercator Capital in Nevada. (*Id.*; Harshaw

Decl., Exs. 3, 4). The Court understands Plaintiffs to be arguing that if Cathcart is accepting service in California but not in Nevada, then it makes more sense that he is a resident and citizen of California, and not of Nevada. The evidence provides some support for this inference, but it does not require it.

Plaintiffs further argue that Cathcart lacks credibility and this Court should disregard his self-serving declaration. (Docket No. 15 at 2). Plaintiffs state that Cathcart's statements in his declaration amount to an assertion that he lied to the California Secretary of State in violation of California law. (*Id.* at 3). They argue that this Court should not believe his statements regarding his residencies given his admission that he lied when it was to his advantage. (*Id.* at 4). Plaintiffs contend that Defendant's self-serving claims that he intends to live indefinitely at a rental property in Nevada do not overcome the fact that his business, employment, livelihood, and residence are in California, and suggest that he is trying to reap Nevada tax incentives. (*Id.* at 5). This Court takes into consideration Plaintiffs' arguments regarding credibility. However, as discussed below, the objective and undisputed evidence supports Cathcart's claim to be a citizen of Nevada.

### iv. Conclusion

In light of the entire record before this Court, the Court concludes that Cathcart has met his burden of proving that he was a domiciliary of Nevada as of October 18, 2013. There is extensive evidence supporting his intention to remain in Nevada, including, but not limited to, the location of his wife and personal possessions, his bank accounts, his driver's license, and his voter's registration. Cathcart has satisfactorily explained evidence that suggests he could be domiciled elsewhere, including using a post office box and spending time in California. There is no evidence before this Court that Cathcart owns or rents property in California, or that he spends extensive time in the state for non-business reasons. There is no evidence, other than Plaintiffs' unsupported claims, that Cathcart runs a business from California. Although he has made relatively recent claims to be a California resident for service of process and

Plaintiffs question his credibility, the substantial objective evidence available at this time demonstrates that Cathcart was a domiciliary of Nevada.

B. Nery's USA

Plaintiffs also assert that Nery's is a citizen of California. (Docket No. 15 at 7-8). As Nery's is incorporated in Nevada, it is a citizen of that state. *See* 28 U.S.C. § 1332(c)(1). However, Nery's is also a citizen of the state or foreign state where it maintains its "principal place of business." *Id.* Plaintiffs contend that Nery's is a citizen of California because its principal place of business is located in California. Defendants assert that the principal place of business for Nery's is in Incline Village, Nevada or Tijuana, Mexico. (Docket No. 16 at 10).

*i. Nery's Operations and Structure*

Nery's has submitted declarations by Cathcart regarding Nery's and its operations. Cathcart states that the "principal assets" of Nery's are: 1) a United States trademark for Nery's brand cheese, 2) a handful of Mexican trademarks, and 3) the stock of a Mexican company, Commercial Targa S.A. de C.V. (Targa). (Supplemental Cathcart Decl. ¶ 7). Defendants assert that Nery's is essentially a holding company for Targa. (Docket No. 21 at 2; Second Supplemental Cathcart Decl. ¶ 2). They assert that Nery's buys cheese from United States suppliers and exports the cheese to Mexico for Targa's benefit. (Supplemental Cathcart Decl. ¶ 8). The cheese is most often processed at a warehouse in San Diego. (*Id.*) The warehouse is operated by a third-party Mexican corporation which is paid on a per-load basis. (*Id.*) Nery's previously used a warehouse in Chula Vista, but ceased to use the facility by the time the Complaint was filed. (*Id.* ¶ 10). Nery's also uses other facilities "when needed" in California and Texas. (*Id.* ¶ 8). The cheese is then exported to Tijuana at the Otay Mesa border crossing in San Diego County. (*Id*)

Defendants state that Nery's generates all of its revenue from sales in Mexico, primarily from the sale of cheese and the use of Mexican trademarks. (*Id.* ¶ 7). They assert that Targa's main operations and managers are in Tijuana. (*Id.* ¶¶ 7, 11).

1    Cathcart states that Nery's "essentially conducts all of its 'administrative' business
2    operations'" through Targa, and that all of Targa's administrative functions are in
3    Tijuana. (*Id.* ¶ 11).

4    Cathcart declares that he lives in Nevada, and that the corporate books and
5    records are in Incline Village Nevada. (Second Supplemental Cathcart Decl. ¶ 6). He
6    asserts that the corporate office is in Nevada, and that Nery's maintains Nevada bank
7    accounts. (Docket No. 21 at 2; Second Supplemental Cathcart Decl. ¶¶ 3, 4).

8    Nery's is registered to do business in the state of California. The 2012 California
9    filing discussed above listed the address of the former Chula Vista warehouse as the
10   address for the "principal business office in California, if any." (Harshaw Decl., Ex.
11   2). Defendants state that the only connection to California is the use of a warehouse
12   to prepare products for export through a border crossing in San Diego County. (Docket
13   No. 16 at 12; Supplemental Cathcart Decl. ¶¶ 8, 10). Defendants claim that Nery's has
14   no employees in the United States and does not own or rent California property.
15   (Docket No. 16 at 11; Supplemental Cathcart Decl. ¶ 4). Cathcart declares that Nery's
16   does not own equipment or heavy machinery in California, and maintains no office or
17   headquarters in California. (Supplemental Cathcart Decl. ¶ 4). Defendants reiterate
18   that the Chula Vista address listed for service of process is a warehouse that Nery's no
19   longer used by October 2013. (*Id.* ¶¶ 9, 10).

20   The parties agree that Cathcart controls the operations of Nery's. Plaintiffs point
21   to the fact that Cathcart is Nery's only officer. (Docket No. 15 at 7). Defendants state
22   that Cathcart is, and has always been, Nery's president, chief executive officer, and
23   majority shareholder. (Docket No. 16 at 10; Supplemental Cathcart Decl. ¶ 3).
24   Cathcart declares that he has been involved in the day-to-day operations of Nery's and
25   all aspects of Nery's corporate decisions and activities. (Supplemental Cathcart Decl.
26   ¶ 7). Defendants assert that as Nery's only officer, Cathcart, directs and controls
27   Nery's corporate activities wherever he is located at the time. (Docket No. 21 at 3;
28   Second Supplemental Cathcart Decl. ¶ 6).

Defendants assert that Cathcart makes "few executive decisions" on behalf of Nery's because it is a holding company. (Docket No. 21 at 2; Second Supplemental Cathcart Decl. ¶ 6). Although Cathcart states that he occasionally makes corporate decisions outside of Nevada when traveling, he does not make corporate decisions related to Nery's business from any California location. (Second Supplemental Decl. ¶¶ 6, 8). Defendants assert that most executive-level decisions have been made in Mexico. (Docket No. 21 at 2; Second Supplemental Cathcart Decl. ¶¶ 2, 5). Cathcart declares that the decisions that Nery's makes regarding Targa involve whether to instruct Targa to transfer funds to Nery's or other entities. (Second Supplemental Cathcart Decl. ¶ 5). Cathcart claims that he makes these decisions upon reviewing the books and records of Targa in Tijuana, Mexico, and speaking about Targa's financial status with its Mexican managers. (*Id.*)

### ii. The Citizenship of Nery's is Distinct From That of Targa or Cathcart

Plaintiffs assert that "Nery's is not its Mexican subsidiary, and Nery's is not Cathcart: It is a corporation." (Docket No. 22 at 2). In determining the principal place of business for Nery's the Court does not assume that Nery's shares the citizenship of its president. However, this Court will look to the location of the decision-maker for the corporation in determining where decisions are made.

Plaintiffs also argue that the activities of a nonparty subsidiary corporation cannot be the "principal place of business" of a parent corporation. (Docket No. 19 at 2). They cite to *Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 775 (9th Cir. 1992), in which the Ninth Circuit concluded that: "Absent a showing that the subsidiary is merely an alter ego of its parent corporation, there is no justification for ignoring the separate corporate structures and looking to the subsidiary's activities to determine the parent's principal place of business." The Court agrees that Tijuana is not Nery's principal place of business merely because of the activities of Targa. Instead, this Court must look to the activities of *Nery's*.

///

### iii. Missing Evidence

Plaintiffs generally contend that Nery's could have submitted a variety of corporate documents and other forms of evidence to meet its burden with regard to Nery's "nerve center." (Docket No. 22 at 2). They further contend that Nery's argument that decisions are made wherever Cathcart happens to be allows Cathcart to manipulate jurisdiction with self-serving declarations. (*Id.* at 3).

It is true that this Court has not been presented with the corporate documents cited by Defendants. It is not clear to this Court whether such documents exist or are available. This Court will consider whether the evidence presented nonetheless allows Nery's to meet its burden.

### iv. Nerve Center

The evidence before this Court is sufficient to allow Nery's to meet its burden to demonstrate that its principal place of business is not located in California. For purposes of determining whether diversity jurisdiction is proper, this Court need only conclude that Nery's is not a citizen of California. As it is apparent from the evidence before this Court that decisions for the corporation are primarily made in Nevada or Mexico, this Court will not needlessly expend additional time and resources to determine whether Nery's is primarily controlled from Mexico or Nevada.

The evidence indicates that documents are maintained and decisions are made in Incline Village, Nevada. Various filings list the Incline Village post office box as the "principal executive office." (Harshaw Decl., Exs. 1, 2). Plaintiffs argue that listing a post office box address as Nery's headquarters does show that Nevada is Nery's "nerve center" for purposes of diversity jurisdiction. (Docket No. 19 at 1-2 (citing *Hertz*, 559 U.S. at 97)). It does appear that Nery's may have improperly listed a mailing address instead of a street address. The Court agrees that merely listing a post office box address does not demonstrate that Nevada is where the corporation's high level officers direct, control, and coordinate its activities. *See Hertz*, 559 U.S. at 80-81. Indeed, it is implausible that decisions are actually made in the post office box.

However, the address listed as headquarters (774 Mays #10-450, Incline Village, NV) appears to be the post office box that Cathcart (the only officer of Nery's) also uses for his personal residence. (Harshaw Decl., Ex. 2; Cathcart Decl. ¶ 9). Cathcart has explained that he keeps books and records in Nevada, and that the bank accounts are in Nevada. (Second Supplemental Cathcart Decl. ¶¶ 3, 4, 6). Further, the parties agree that Cathcart makes the relevant decisions for Nery's, and Cathcart has produced ample evidence of the time he spends in Nevada, as discussed above.

Nery's has also submitted evidence that the decisions made outside of Nevada are primarily made in Mexico. Cathcart has declared that Nery's is a holding company for Targa, that most of the decisions made by Nery's involve giving direction to Targa, and that such decisions are made after gathering information in Mexico.

Plaintiffs argue that Nery's continues to improperly rely on the activities of a separate entity, Targa. (Docket No. 22 at 4). They further suggest that Cathcart has changed his story, as he previously indicated that another company paid for his San Diego Apartment because he was frequently traveling for Mercator Capital, but now implies that his trips to Mexico are for the purposes of making decisions regarding Nery's activities. (*Id.*) They suggest that if Nery's is a holding company, then it is just a shareholder and has no business in Mexico and "no justifiable purpose" for an officer or director to be in Mexico making decisions about Nery's operations. (*Id.* at 5). They contend that Nery's does not show why it must travel to Mexico to make decisions, or indicate what decisions are made there. (*Id.*)

The Court finds nothing inherently implausible about the notion that Cathcart may have multiple reasons to travel to Mexico, or that a parent company might find it ideal for decisions about a subsidiary to be made after the parent company's officer has assessed the situation on the ground. Although the activities of Targa are not attributed to Nery's, the fact that Targa operates out of Tijuana supports the claim that *Nery's* makes high-level decisions in Tijuana because many of its decisions involve the subsidiary.

### v. *California is Not the Nerve Center*

Although Plaintiffs assert that the nerve center is in California, such allegations are unsupported and contrary to the evidence before this Court.

First, Plaintiffs point to the fact that Cathcart is Nery's only officer, and that he has declared that he is a California resident for service purposes. (Docket No. 15 at 7). Plaintiffs also point out that Nery's admits that its president resides in various rental properties, including a property in San Diego. (Docket No. 22 at 3-4). Although such evidence supports an argument that Cathcart spends time in California, it does not indicate that he directs, controls, and coordinates operations from California. This is especially true in light of the fact that the books and records are in Nevada and the Mexican subsidiary is in Tijuana. Cathcart states that when he was the agent for service of process in California, he arranged for the tenant at the Nirvana Avenue location to accept service on his behalf. (Supplemental Cathcart Decl. ¶ 9). Cathcart has put forward evidence in the form of his declarations, and Plaintiffs have not undermined or meaningfully contradicted that evidence.

Second, Plaintiffs point to the existence of warehouse and commercial operations in California. They point to the listing of a principal place of business in California on California filings. (Docket No. 22 at 4). Plaintiffs argue that Nery's California office is the only office known to have employees and operations. (Docket No. 15 at 8). They assert that the legal counsel that filed a State of Information for Nery's is in San Diego, that the San Diego office has employees, and that the San Diego office is where Cathcart was served by substituted service. (Docket No. 15 at 4). Plaintiffs did not point to evidence of these allegations in their briefing. Plaintiffs also argue that "by the nature of those operations, Nery's must make strategic decisions regarding those activities in California." (Docket No. 22 at 5). They point to the admission that Nery's processes and exports cheese in the California facility, and not at the Nevada post office box or in Mexico. (*Id.* at 5-6). They point to the fact that Nery's pays for processing services in the San Diego warehouse, and that this shows that it is Nery's

operating in the United States, and not Targa. (*Id.* at 5). They contend that Targa does not operate in the United States, and Nery's is not operating in Mexico. (*Id.*)

Defendants dispute these assertions. As stated above, Defendants claim that Nery's has no employees in the United States and does not own or rent California property. (Docket No. 16 at 11; Supplemental Cathcart Decl. ¶ 4). Cathcart declares that Nery's does not own equipment or heavy machinery in California, and maintains no office or headquarters in California. (Supplemental Cathcart Decl. ¶ 4). Defendants asserted that the Chula Vista address listed for service of process is a warehouse that Nery's no longer used by October 2013. (*Id.* ¶¶ 9, 10). Further, Defendants argue that even if the bulk of Nery's business activities occurred in California, Nery's would not be a citizen of California because it does not make decisions there. (Docket No. 21 at 3). They emphasize that merely doing business in California would not make Nery's a citizen of California. (Docket No. 16 at 12 (citing *Hertz Corp.*, 559 U.S. at 96)). Finally, Defendants assert that Nery's only registered as a foreign for-profit corporation in California in order to sue a California corporation for trademark violations. (Supplemental Cathcart Decl. ¶ 9).

Although at least some processing of cheese takes place in California, the evidence before this Court does not establish that the high-level decisions are made in California. Other than conclusory allegations, there is no evidence of an actual office space or employees in California. Plaintiffs do not explain their claim that the "nature of the operations" in California means that "strategic decisions" must be made there. (Docket No. 22 at 5). Even if cheese is processed in California and exported from California, this would not automatically require decisions about processing and exporting to be made there. Plaintiffs offer this Court no sufficient reason to ignore the sworn declaration of Nery's president regarding operations.

The Court has also examined Nery's public filings with the California Secretary of State. (Harshaw Decl., Exs. 1, 2). The 2011 document lists the "principal executive office" at the Incline Village postal box address, and lists no address for the "principal

office in the State of California." (Harshaw Decl, Ex. 1). The 2012 document lists the Incline Village Address as the "street address of principal executive office," and the Chula Vista warehouse address for the "principal business office in California, if any." (Harshaw Decl., Ex. 2). These documents are not necessarily inconsistent with its claims that Nery's sole high-level officer does not direct, control, and coordinate its activities from California. At the outset, this Court must determine citizenship as of the fall 2013 filing, over a year after the 2012 filing. Further, the documents list the Nevada address for the principal executive office and nowhere indicate that the corporation's activities are being controlled or directed from any California property.

### *vi. Conclusion*

All of the evidence before this Court indicates that Nery's is not a citizen of California. Cathcart has provided declarations containing specific details on Nery's operations that provide a sufficient explanation for registering in California and listing the Chula Vista warehouse address. The Second Supplemental Declaration indicates that many executive-level decisions are made in Mexico, and provides a plausible explanation for this claim. It also indicates that the books, records, and bank accounts of Nery's are located in Nevada. By contrast, there is no evidence that the principal place of business for Nery's is located in California. At most, Plaintiffs have demonstrated that Cathcart makes high-level decisions for Nery's and that Cathcart sometimes spends time in California. Although Plaintiffs allege that operations are conducted in California and that employees are located here, they offer no declarations or other evidence to support these claims, despite filing three briefs on the matter. In contrast, Defendants provided details about Nery's operations in various locations. There is no evidence that Cathcart ran Nery's or made business decisions from either a residence or a warehouse in California. The detailed evidence provided by Defendants indicates that Nery's is not a California resident, and that evidence has not been undermined. Accordingly, Defendants have met their burden to show that Nery's is not a citizen of California, and that subject matter jurisdiction is therefore proper.

## CONCLUSION

Based on the foregoing, the Court **VACATES** the Order to Show Cause. In light of this Court's determination that it has subject matter jurisdiction, and as stated in this Court's Order to Show Cause, Defendants have leave to re-file the motions which were dismissed as premature by this Court on June 5, 2014. Defendant Cathcart has **fourteen days** from the date this Order is filed to answer or otherwise respond to the operative complaint.

**IT IS SO ORDERED.**

Dated: August 11, 2014

HON. ROGER T. BENITEZ
United States District Judge